# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ALVIN J. COOK, JR.,**
**Claimant Below, Petitioner**

**vs.) No. 23-ICA-153**     (JCN: 2016030652)

**CECIL I. WALKER MACHINERY CO.,**
**Employer Below, Respondent**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Alvin J. Cook appeals the March 20, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Cecil I. Walker Machinery Co. ("CWMC") filed a timely response.[1] Mr. Cook did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the addition of radiculopathy as a compensable condition and denied authorization for a lumbar x-ray and a lumbar MRI.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Cook suffered a workplace injury on June 3, 2016, while employed by CWMC. On June 8, 2016, the claim administrator issued an order holding the claim compensable for lumbar strain. Prior to his 2016 injury, Mr. Cook was treated for back pain in 1990 and a 2012 x-ray revealed degenerative disc disease in his lumbar spine.

On June 22, 2016, Mr. Cook underwent an MRI of his lumbar spine, which revealed multilevel degenerative disc disease and spinal stenosis. Mr. Cook was seen by Rajesh Patel, M.D., on June 29, 2016, at which time Mr. Cook reported pain in his lower back and weakness in his back and left leg. Dr. Patel diagnosed Mr. Cook with lumbar sprain, lumbago, lumbar spondylosis, annular tear L4-5, lumbar disc herniation L2-3, lumbar stenosis L3-4, and neuroforaminal narrowing at L3-4 left side. Dr. Patel recommended physical therapy, a back brace, and a referral to a pain clinic.

---

[1] Mr. Cook is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. CWMC is represented by Jeffrey B. Brannon, Esq.

1

Andrew Thymius, D.O., treated Mr. Cook from September 2016 through October 2017. Dr. Thymius diagnosed Mr. Cook with multilevel degenerative disc disease, spondylosis without myelopathy or radiculopathy in the lumbar and lumbosacral regions, and lumbar stenosis. Dr. Thymius administered lumbar facet blocks at L3, L4, and L5 on October 3, 2016, and October 18, 2016. On November 23, 2016, Mr. Cook underwent an EMG/nerve conduction study, revealing evidence of left lumbosacral radiculopathy. On December 28, 2016, Dr. Thymius performed a radiofrequency ablation at L3-4, L4-5, and L5-S1.

On January 26, 2017, Prasadarao Mukkamala, M.D., saw Mr. Cook for an independent medical examination ("IME"). Dr. Mukkamala diagnosed Mr. Cook with a lumbar strain superimposed on preexisting degenerative spondyloarthropathy. Dr. Mukkamala opined that Mr. Cook had reached his maximum degree of medical improvement ("MMI") for his compensable injury.

Mr. Cook was seen by Bruce Guberman, M.D., for an IME on July 18, 2017. Dr. Guberman diagnosed Mr. Cook with chronic posttraumatic strain of the lumbar spine, superimposed on preexisting degenerative joint disease and degenerative disc disease, and he also diagnosed signs and symptoms consistent with left-sided lumbar radiculopathy. Dr. Guberman opined that lumbar radiculopathy was related to Mr. Cook's compensable injury and that he had reached MMI.

On February 18, 2021, Mr. Cook was seen by Michael Muscari, M.D. Dr. Muscari submitted a Diagnosis Update form on February 26, 2021, requesting the addition of low back pain with radiculopathy, decreased range of motion, left leg pain, and numbness in bilateral feet as compensable conditions.[2] Dr. Muscari also requested x-rays and an MRI of the lumbar spine. By order dated May 7, 2021, the claim administrator denied the diagnosis update and requested treatment. Mr. Cook protested this order. On May 19, 2021, Dr. Muscari issued a report finding that Mr. Cook was experiencing decreased range of motion, pain with movement, and shooting pains down the bilateral legs. Dr. Muscari again opined that Mr. Cook required new x-rays and an MRI.

Mr. Cook was seen by David Soulsby, M.D., for an IME on October 31, 2022. Dr. Soulsby opined that Mr. Cook sustained a lumbar strain as a result of the compensable injury. He noted that Mr. Cook had degenerative disc disease and lumbar spinal stenosis which were symptomatic prior to the injury. Dr. Soulsby opined that the symptoms of radiculopathy were not due to the compensable injury and that the x-rays and MRI were not necessary as the compensable condition was a lumbar strain.

On March 20, 2023, the Board issued an order affirming the claim administrator's order, which denied the addition of radiculopathy as a compensable condition and denied

_____

[2] Only the requested diagnosis of radiculopathy is at issue in the instant appeal.

2

authorization for a lumbar x-ray and a lumbar MRI. The Board found that Mr. Cook failed to establish by a preponderance of the evidence that a diagnosis of radiculopathy was supported because it found that he experienced similar symptoms years before the injury. Further, the Board determined that the requested treatments were not medically necessary and reasonably related to the compensable injury. Mr. Cook now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Cook argues that the evidence clearly established that he developed radiculopathy as a result of his compensable injury. Mr. Cook further argues that although he had prior lumbar symptoms, he had not been diagnosed with radiculopathy prior to his compensable injury, reflecting that it is a discrete new injury. We disagree.

The Supreme Court held, in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Gill* at 738, 783 S.E.2d at 858. syl. pt. 3

3

The Court clarified its position in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E. 2d 779 (2022), holding:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Moore* at ___, 879 S.E.2d at 781. syl. pt. 5

The Board found that Mr. Cook had not established by a preponderance of the evidence that radiculopathy was related to his compensable injury. The Board noted that the compensable injury of a lumbar strain occurred six years prior to Mr. Cook's request to add radiculopathy to the claim as a compensable condition. The Board also noted Mr. Cook's history of lumbar symptoms dating back to 1989 and the radiographic findings of degenerative changes to his lumbar spine. The Board found that under the guidance of *Gill* and *Moore*, the evidence does not support the addition of radiculopathy as a compensable condition. Further, the Board found that Mr. Cook failed to establish that the request for a lumbar x-ray and MRI were medically necessary and reasonably related to the compensable injury.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Cook failed to establish by a preponderance of the evidence that a diagnosis of radiculopathy was causally related to the compensable injury and that the requested treatments were medically necessary and reasonably related to the compensable injury.

Finding no error in the Board's March 20, 2023, order, we affirm.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

4